IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MICHAEL GERHART, | : | CIVIL ACTION |
|---|---|---|
| Plaintiff | : | |
| | : | |
| v. | : | NO. 10-425 |
| | : | |
| EXELON CORPORATION, | : | |
| Defendant | : | |

M E M O R A N D U M

**STENGEL, J.** February 21, 2011

Michael Gerhart filed an employment discrimination action against his former employer alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, a violation of the Pennsylvania Human Relations Act,[1] and the state law tort of intentional interference with prospective contractual relations. The defendant filed a motion for summary judgment to which the plaintiff responded. For the following reasons, I will grant the motion in its entirety and enter judgment on behalf of the defendant.

**I. BACKGROUND**[2]

Michael Gerhart worked at Exelon Generation Company for eleven years as a First Class Maintenance Technician at the Limerick Generating Station, allegedly enjoying an

---

[1] Title VII prohibits employers from retaliating against employees who oppose discriminatory employment practices or file their own charges of discrimination. See 42 U.S.C. § 2000e-3(a). The PHRA also prohibits an employer from discriminating against employees who oppose discrimination or file charges of discrimination. 43 PA. CONS. STAT. § 955(d). While Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts. Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995).

[2] The majority of facts are taken from the defendant's statement of undisputed facts. Pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure, because the plaintiff has failed to address the defendant's assertion of facts as required by Rule 56(c), I will consider the defendant's facts undisputed for purposes of this motion.

excellent work record. Pursuant to this employment, Mr. Gerhart applied for unescorted access to the nuclear power plant, which was a requirement for his position. As part of this process, Mr. Gerhart signed an Exelon PADS³ Consent Form and a PSEG Nuclear PADS Consent Form. See Document #10-3, Exhibit 1.

Pursuant to his execution of these consent forms, Mr. Gerhart consented that Exelon Generation could obtain, retain, and transfer information necessary to determine whether to grant him access to a nuclear power plant. Id. The PADS Consent Forms specifically provide that the information obtained will be used in determining that an individual is trustworthy, reliable, and fit-for-duty. By signing the forms, Mr. Gerhart acknowledged that the information will include, but is not limited to, dates when unescorted access has been authorized or terminated. Furthermore, he released Exelon, other PADS participants, NEI, and the officers, employers, representatives, agents, and records custodians of any entity or individual supplying such information from any and all liability based on their authorized receipt, disclosure, or use of the information obtained pursuant to the Consent and to determine eligibility for unescorted access.

On April 24, 2007, Mr. Gerhart was interviewed by the defendant's security team regarding the investigation of an allegation of sexual harassment which occurred five

---

³ PADS, an acronym for "person access data system," is a computerized, restricted-access data system which shares information necessary to process the applications of workers for unescorted access to nuclear power plant protected areas. This system permits nuclear power licensees and their accepted contractors/vendors to meet regulatory requirements mandating that certain information be available to any power reactor licensee by retaining certain access information in a central computer database.

years before in the men's locker room with four men present. The security officer described the incident but Mr. Gerhart said he did not witness the incident. He did see one of the gentlemen "make a hand motion" towards another gentleman. Attached to his response to the motion for summary judgment, Mr. Gerhart provided an affidavit in which he described, *inter alia*, the incident and the security interview as he remembered them. Ron Seltman, Mike Kern, Ed Conjar, and Mr. Gerhart were all in the locker room together. In response to the security manager telling Mr. Gerhart that Mr. Conjar accused Mr. Seltman of sexually assaulting him, Mr. Gerhart told the interviewer that no such assault had occurred. The interview lasted approximately forty-five minutes. On the way home from the interview, Mr. Gerhart left a message on Mr. Conjar's telephone and asked him to return the call.

Two days later, Mr. Gerhart was called back for a second interview. This time, the security manager seemed angry and asked Mr. Gerhart if he had attempted to contact Mr. Conjar. Mr. Gerhart told the manager that he called Mr. Conjar about a car he had recently purchased from him. He then "clarified" his testimony from the first interview. This time, he recalled seeing Mr. Seltman standing at Mr. Conjar's feet. Mr. Gerhart said that that would have made it impossible for Mr. Seltman to have performed the alleged sexual act on Mr. Conjar.

The defendant's security department determined that Mr. Gerhart was lying during the interviews. By letter dated May 31, 2007, Exelon advised Mr. Gerhart that it was

denying his unescorted access to its nuclear plants based on trustworthiness and reliability, as a result of its conclusion that Mr. Gerhart had provided false information during an internal investigation. See Document #10-3, Exhibit 2. When unescorted access is removed for any reason, employees, contractors, and vendors are legally prohibited from accessing the vast majority of Exelon's nuclear power plant locations, which may result in termination of employment if such access is necessary for the employee to perform his or her job duties. On November 19, 2007, Exelon terminated Mr. Gerhart's employment as a result of the investigation and denial of access. See Document #10-3, Exhibit 4. His appeal of the access denial was denied in August 2007. Mr. Gerhart also requested a peer panel process seeking an overturn of his termination. The peer panel determined that Mr. Gerhart was not lying, and suggested that his employment be reinstated with full back pay. He could not return to work, however, because his access was denied. Mr. Gerhart appealed a second time following the peer panel decision, but was denied a second time.

On December 14, 2007, Mr. Gerhart signed a Waiver and Release under the Exelon Corporation Severance Benefit Plan. See Document #10-3, Exhibit 3. This Waiver and Release released Exelon Corporation and its affiliated entities, including but not limited to Exelon Generation, from all claims that otherwise could have been asserted by Mr. Gerhart arising out of his employment and/or termination of employment with Exelon Generation, including claims under Title VII, claims under any state anti-

discrimination law, breach of contract claims, and tort claims. Id. As consideration for this Waiver and Release, Mr. Gerhart received salary continuation for thirty-three weeks, payment of his COBRA health insurance premiums, life insurance coverage, and tuition reimbursement.

## II. STANDARD OF REVIEW

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits

5

or declarations, stipulations, admissions, interrogatory answers or other materials. FED. R. CIV. P. 56(c)(1)(A). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. at 322. Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252. If the non-moving party has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

The defendant argues that it is entitled to summary judgment because, *inter alia*, Mr. Gerhart waived the claims he now attempts to assert. I agree.

An employee's release of claims, if knowing and voluntary, waives those claims and bars a subsequent suit. See Coventry v. United States Steel Corp., 856 F.2d 514, 522 (3d Cir.1988); see also Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1974). A

waiver is valid if made knowingly and voluntarily, and although a totality of the circumstances test[4] is used to determine the validity of the release, the court should also consider whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against the public interest. Jakimas v. Hoffmann-LaRoche, Inc., 485 F.3d 770, 781 (3d Cir. 2007).

Here, Mr. Gerhart does not argue that the Waiver and Release is invalid, or that his signing it was unknowing or involuntary. Instead, he argues that the conduct of which he complains arose *after* he signed the release, thereby rendering it moot. Unfortunately, Mr. Gerhart does not indicate to what conduct he refers. He cites an Eleventh Circuit opinion which held that a release waiving an employee's right to sue on any then-existing claims did not waive his right to sue for the employer's subsequent post-termination conduct. Smith v. BellSouth Telecommunications, Inc., 273 F.3d 1301, 1311 n.7 (11th Cir. 2001). There, the former employee signed a general release when he resigned from his employment. He later re-applied but was not hired. Although he had signed a release, that plaintiff was allowed to pursue a claim that the company's failure to rehire was in

---

[4] The Third Circuit has suggested that district courts consider the following non-exhaustive factors in determining the validity of a release: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation of the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release before signing it; (5) whether the plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the release; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which he was already entitled to by law. Cirillo v. Arco Chemical Co., 862 F.2d 448, 451 (3d Cir. 1988) (citing Coventry, 856 F.2d at 523).

retaliation for his previous exercise of rights under the Family Medical Leave Act.  Id.

In this case, Mr. Gerhart does not specify any post-termination conduct on the part of the defendant which would give rise to a claim of retaliation.  The amended complaint suggests that the defendant's refusal to rescind the withholding of his security clearance shows an intent to retaliate against him by the defendant, and has prevented him from ever again working in the security industry.  See Am. Compl. ¶¶ 30-31.  Mr. Gerhart was aware of his appeals being denied, however, before signing the Waiver and Release in December 2007.  By then, his unescorted access had been denied, his employment had been terminated, the peer panel process had concluded, and two separate appeals had been denied.

In addition, by signing both PADS Consent Forms, Mr. Gerhart acknowledged that, *inter alia*, dates of any denial of access and the company holding the relevant information may be transferred, electronically or otherwise, to other licensees and contractor/vendors or the agents of each.  See Document #10-3, Exhibit 1.  He also released the defendant and all other PADS participants from any and all liability based on their authorized receipt, disclosure, or use of the information obtained pursuant to the consent and to determine his eligibility for unescorted access.  Id.  Accordingly, by signing the Consent Forms, Mr. Gerhart demonstrated that he understood and agreed that a denial of unescorted access could be disclosed to another entity, and therefore waived any claims related to that disclosure, including any future employment difficulties.

Finally, although conceded by the plaintiff, it is important to note that the Waiver and Release is valid, and that Mr. Gerhart signed it knowingly and voluntarily. The plain language of the Waiver and Release indicates that all of the issues that Mr. Gerhart has raised in this current action were encompassed in the release. The Waiver and Release, signed by Mr. Gerhart, states in relevant part, "In exchange for the optional severance benefits to be provided . . . I knowingly and voluntarily agree to this waiver and release of claims." See Document #10-3, Exhibit 3. Further, the Waiver and Release states, "I understand and agree that, in signing this Waiver and Release, I am waiving and releasing any and all claims of whatever nature that I now have or that I may ever have had against the Released Parties up until the date I sign this Waiver and Release, including but not limited to: . . . (g) Claims of discrimination in employment or *retaliation* under any federal, state or local statute, ordinance, regulation or constitution; . . . and (i) Any common law or statutory claims of wrongful discharge and *any other common law tort* or statutory claims." Id. (emphasis added). Mr. Gerhart was given the document on November 19, 2007, and signed it on December 14, 2007, almost a month later. There is also no indication that Mr. Gerhart is insufficiently intelligent to have not understood the terms of the document, especially given that he worked for eleven years for the defendant and rose to the position of First Class Maintenance Technician. The termination letter which accompanied the Waiver and Release advised Mr. Gerhart to review the documents with an attorney before making any decision or signing the documents. Mr. Gerhart

9

signed the Waiver and Release on December 14, 2007, after his denial of access and his termination of employment. He cannot dispute that he was aware of these two events before he signed the Waiver and Release. In exchange, Mr. Gerhart received adequate consideration, i.e., a handsome benefit package including salary continuation, payment of his health insurance premiums, life insurance coverage, and tuition reimbursement. See Westak v. Lehigh Valley Health Network, 342 F.3d 281, 294 (3d Cir. 2003) (severance paid to the terminated employee was substantial and certainly in addition to what the employee was entitled to upon his termination – nothing). I finally note that there is no allegation of fraud or undue influence on the defendant's part, or that enforcing any provision would be against the public interest.

In conclusion, because Mr. Gerhart validly waived all claims encompassed in Counts One, Two, and Three of the amended complaint, the defendant is entitled to summary judgment. Accordingly, I will grant its motion in its entirety.

An appropriate Order follows.